IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| FLORA KIM, individually and as Guardian Ad Litem for W.K., DAVID KANG, | CIVIL NO. 16-00460 JAO-KJM |
| Plaintiffs, | ORDER: 1) GRANTING IN PART AND DENYING IN PART DEFENDANT CROCS INC.'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT MILLER ENGINEERING INC. AND |
| vs. | 2) DENYING PLAINTIFFS' MOTION TO EXCLUDE CERTAIN OPINIONS OF ANTHONY HAYTER |
| CROCS, INC., ET AL. | |
| Defendants. | |

**ORDER: 1) GRANTING IN PART AND DENYING IN PART DEFENDANT CROCS INC.'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT MILLER ENGINEERING INC. AND 2) DENYING PLAINTIFFS' MOTION TO EXCLUDE CERTAIN OPINIONS OF ANTHONY HAYTER**

**INTRODUCTION**

This products liability action arises out of an accident at the Hilton Hawaiian Village where W.K.'s shoe became entrapped in an escalator. The parties have filed multiple motions to exclude expert opinions and testimony, two of which are addressed herein. For the reasons articulated below, the Court: 1) GRANTS IN PART AND DENIES IN PART Defendant Crocs Inc.'s ("Defendant") Motion to Exclude Plaintiffs' Expert Miller Engineering Inc. and 2) DENIES Plaintiffs Flora

1

Kim and David Kang's (collectively "Plaintiffs") Motion to Exclude Certain

Opinions of Anthony Hayter.

## **LEGAL STANDARD**[1]

Rule 702 of the Federal Rules of Evidence ("FRE") governs the

admissibility of expert evidence.[2]  *Clausen v. M/V New Carissa*, 339 F.3d 1049,

1055 (9th Cir. 2003).  FRE 702 allows the admission of expert testimony when

---

[1] It is unclear why counsel extensively (and near exclusively) rely on out-of-circuit appellate and district court opinions, when no shortage of Ninth Circuit law exists. Pro hac vice counsel should take greater care to familiarize themselves with the applicable law in this district for both substantive and procedural issues.  The parties are also reminded to acknowledge the sources they reference.  In their Opposition to Defendant's Motion, Plaintiffs copied the legal standard from *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1043-44 (9th Cir. 2014), without attributing it to that case.  Doc. No. 339 at 7-8.

[2] FRE 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

scientific, technical, or other specialized knowledge will help the trier of fact understand the evidence or determine a fact in issue. Fed. R. Evid. 702; *United States v. Vallejo*, 237 F.3d 1008, 1019 (9th Cir. 2001), *amended by* 246 F.3d 1150 (9th Cir. 2001) (To be admissible, "expert testimony must . . . address an issue beyond the common knowledge of the average layman").

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court, focusing on the admissibility of scientific expert testimony, found that such testimony is admissible only if it is both relevant and reliable. *Id.* at 589. "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010); *Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."). The court must make "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 U.S. 592-93. The presiding judge's role (or gatekeeping function) in ensuring the reliability and relevancy of expert testimony extends to all expert testimony. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 146 (1999).

*Daubert* outlined nonexclusive factors—"(1) whether the theory can be and has been tested, (2) whether the theory has been peer reviewed and published, (3) what the theory's known or potential error rate is, and (4) whether the theory enjoys general acceptance in the applicable scientific community"— that may bear on the determination regarding the reliability of a particular scientific theory or technique. *Murray v. S. Route Mar. SA*, 870 F.3d 915, 922 (9th Cir. 2017) (citing *Daubert*, 509 U.S. at 593-94).

> The test of reliability is flexible and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case.[] The list of factors was meant to be helpful, not definitive,[] and the trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable,[] based on the particular circumstances of the particular case.

*Primiano*, 598 F.3d at 564 (citations omitted) (internal quotations omitted). District courts have broad latitude in determining reliability and deciding how to determine reliability. *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1017 (9th Cir. 2004). "A district court may permissibly choose not to examine factors that are not 'reasonable measures of reliability in a particular case.'" *Murray*, 870 F.3d at 922.

The *Daubert* inquiry focuses on the reliability of "principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595; *Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311, 1318 (9th Cir. 1995) ("*Daubert II*"). The district court's function is to "screen the jury from unreliable

nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013). It "is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury." *Id.* at 969-70; *Kennedy v. Collagen Corp.*, 161 F.3d 1226, 1230 (9th Cir. 1998) (identifying second *Daubert* requirement that an expert's opinions assist the trier of fact).

"The requirement that the opinion testimony 'assist the trier of fact' 'goes primarily to relevance.'" *Primiano*, 598 F.3d at 564 (citation omitted). The relevancy, or "fit," requirement, demands that "proposed expert testimony is 'relevant to the task at hand,' . . . i.e., that it logically advances a material aspect of the proposing party's case." *Daubert II*, 43 F.3d at 1315 (citation omitted). Experts who satisfy FRE 702 "may testify and the jury decides how much weight to give that testimony." *Primiano*, 598 F.3d at 565.

## DISCUSSION

A.  **Defendant's Motion to Exclude Expert Miller Engineering Inc.**

Defendant moves to exclude all opinions rendered by Miller Engineering, Inc. ("MEI") because they are unreliable, irrelevant, and cannot assist the trier of fact. Defendant identifies the following deficiencies: 1) the opinions are based on self-selected unique testing methods that are not scientifically reliable,

independently tested or peer-reviewed; 2) MEI did not perform or supervise the actual tests; 3) the opinions are unsupported by the data; 4) MEI made no effort to connect their work product to the actual facts of the case; 5) MEI's ultimate causation opinion does not follow from their test results and is merely its *ipse dixit*; and 6) there are no relevant opinions in support of Plaintiffs' failure to warn claim.

Plaintiffs retained MEI to determine 1) "whether a defect in the Crocband rendered it dangerous for its intended or reasonably foreseeable use"; 2) "whether that defect was a cause of W.K.'s injuries"; and 3) "to what extent the warnings provided by Crocs, if any, provided adequate instructions for safe use and warned of the dangers of escalator entrapment." Doc. No. 283-2 at 1. The MEI report[3] was prepared by Dr. James Miller and Bradley Cook, both of whom Plaintiffs have designated as expert witnesses. Among other things, the report summarizes five tests—shoe material and configuration characterization; shoe sole material compression testing; whole-shoe compression testing; coefficient of friction testing; and hardness testing—and their results. *Id.* at 17-24.

---

[3] Although the report was filed under seal in connection with Defendant's Motion for Summary Judgment, the Court discusses its contents to the same extent as the parties, and as necessary to address this Motion in this publicly available Order. In the future, the parties will be expected to submit all relevant exhibits with the corresponding motions. The Court will not consider exhibits attached to other filings or arguments incorporated by reference.

1. <u>Request to Strike Mr. Cook's and Dr. Elizabeth Buc's Declarations</u>

The Court preliminarily addresses Defendant's request to strike Mr. Cook's and Dr. Elizabeth Buc's declarations pursuant to FRCP 37(c)(1). Defendant claims that these declarations constitute an improper attempt to supplement MEI's opinions. The Court disagrees.

Federal Rule of Civil Procedure ("FRCP") 26(a)(2)(A) only requires disclosure of the identities of witnesses *who may be used at trial to present evidence* under FRE 702, 703, or 705.[4] Fed. R. Civ. P. 26(a)(2)(A) (emphasis added). Such witnesses must provide a written report. Fed. R. Civ. P. 26(a)(2)(B). FRCP 37(c)(1) sanctions pertain solely to witnesses identified under FRCP 26(a). Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e),[5] the party is not allowed to use that . . .

---

[4] Defendant misstates FRCP 26(a)(2)'s requirement. Reply at 4 (FRCP 26(a)(2) "requires the parties to disclose the identities of each expert and, for retained experts, disclose the expert's opinions"). FRCP 26(a)(2) draws no distinction between experts and retained experts. Defendant also misapprehends FRCP 26(a)(2) to apply to any expert witness, despite its clear limitation to experts who will be used to present evidence at trial. Heading number 2 in the Reply states: "Buc's Affidavit Should Be Excluded As Entirely New Testimony Offered by a Witness Previously Disclosed as Non-Testifying." *Id.* at 7. Statements in a declaration do not constitute expert testimony presented at trial.

[5] FRCP 26(e) addresses supplementation of experts "whose report[s] must be disclosed under rule 26(a)(2)(B)." Fed. R. Civ. P. 26(e)(2).

witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

Dr. Buc is not a testifying witness, therefore, FRCP 26(a) does not govern the disclosure of her identity or other information, and FRCP 37(c) does not provide a basis to strike her declaration.

Although Mr. Cook is a testifying expert who provided a report, neither does FRCP 37(c)(1) support the striking of his declaration. The Court finds that Mr. Cook's declaration does not constitute improper supplementation and Defendant's attempt to characterize it as such is without merit. Interestingly, Defendant seeks relief under FRCP 37(c)(1), yet its arguments and non-controlling legal authority on pages 5-7 of the Reply concern sham affidavits, an entirely distinct concept that arises in the summary judgment context.[6]

Even if the issue were properly before the Court, Defendant's examples demonstrate that it has fabricated contradictions and misrepresented the content of the exhibits referenced. For example, Defendant argues that "Cook testified in his deposition that the client asked MEI to add additional Crocs' models, and only after the Crocband tests did not yield desired results." Reply at 7. The cited portion of Mr. Cook's deposition says nothing of the sort.

---

[6] The sham affidavit rule prevents a party from creating "an issue of fact by an affidavit contradicting his prior deposition testimony." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (quoting *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009)) (internal quotation omitted).

Q:      But also without the Crocband around the exterior?

A:      Correct, without the Crocband exterior, correct.

Q:      Why was that important to your testing?

A:      Really wanted to just evaluate that as a variable.  I didn't want
        to have results for the Crocband and then not be able to know if
        the band itself was responsible for those results or interacted or
        interplayed in some way.  Likewise for the holes and the
        perforations, to see if that affected any of the results.

Q:      And what did you find in that respect?

A:      I believe in general, without looking at the specific results, that
        the Crocband did have a different coefficient of friction slightly
        and it did have a slightly different hardness.

Reply, Ex. H at 53:15-54:3.  Thus, not only is Defendant's reliance on the sham

affidavit rule misplaced, its arguments and examples would not entitle it to relief.

      For these reasons, the Court DENIES Defendant's request to strike Mr.

Cook's and Dr. Buc's declarations.

      2.  First _Daubert_ Prong – MEI's Opinions are Reliable

      Defendant argues that MEI's opinions are unreliable because MEI did not

conduct any of the five tests at its facility, using its equipment, or under its

supervision.  Plaintiffs explain that all testing was performed by or under MEI's

supervision and it worked with several consulting experts to perform some of the

underlying testing and to gather data which MEI analyzed and evaluated in

forming its opinions.

In seeking exclusion on the basis of unreliability, Defendant attempts to impose non-existent standards. Defendant deems unreliable MEI's opinions because Mr. Cook failed to perform, review, and understand the tests discussed in MEI's report. *Daubert* does not require that testing occur at an expert's lab, or that all testing be supervised by the expert. Therefore, to the extent this Motion is premised on those arguments, it is DENIED.

FRE 703 expressly authorizes experts to "base an opinion on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. The facts or data upon which an expert forms an opinion on a particular subject need not be admissible "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." *Id.* "[A]n expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation." *Daubert*, 509 U.S. at 592; *Monsanto Co. v. David*, 516 F.3d 1009, 1015 (Fed. Cir. 2008) (citing *Sweet v. United States*, 687 F.2d 246, 249 (8th Cir. 1982); *Data Line Corp. v. Micro Techs., Inc.*, 813 F.2d 1196, 1200-01 (Fed. Cir. 1987)) (finding that experts are not required to obtain the bases for their opinions from personal perception).

Here, Mr. Cook stated in his deposition that engineers, including him, routinely rely on material scientists such as Dr. Buc to provide data about material composition. Opp'n, Ex. A at ¶¶ 5, 7-8. He also explained that measuring

compressibility and elongation are standard and acceptable engineering tests; he has performed coefficient of friction testing on approximately 50 occasions; and surface hardness is a standard engineering test that he is qualified to perform and evaluate. *Id.* at ¶¶ 9-10, 12-13, 16. The Court finds that the tests conducted in this case would be reasonably relied upon by experts, and MEI's opinions shall not be excluded merely because MEI did not personally conduct the tests. *Monsato*, 516 F.3d at 1015 ("[N]umerous courts have held that reliance on scientific test results prepared by others may constitute the type of evidence that is reasonably relied upon by experts for purposes of Rule of Evidence 703.").

Defendant further contends that MEI's testing utilized unique, modified methods, and was not conducted in accordance with ASTM standards. Although Defendant cites *Daubert's* "can be (and has been) tested" factor, it relies on a lack of peer review and independent studies as dispositive of unreliability. In particular, Defendant argues that Plaintiffs cannot establish that the two studies relied upon by MEI—the Arthur Little Study ("Little study") and Japan's National Institute of Technology and Evaluation Report ("NITE report")—satisfy FRE 702, 703, and 902. Again, Defendant endeavors to impose requirements that do not exist. It claims that Plaintiffs must show that the Little study and NITE report are admissible on their own. Yet the case relied upon for this proposition contains no

such requirement. *See In re James Wilson Associates*, 965 F.2d 160, 172-73 (7th Cir. 1992).[7]

Defendant posits that the Little study does not provide a foundation for MEI's methodology and the NITE report is inadmissible for lack of authentication under FRE 902 and relevance pursuant to FRE 702, and also lacks reliability. These arguments are without merit. Defendant cites *Geshke v. Crocs, Inc.*, 889 F. Supp. 2d 253, 262 (D. Mass. 2012), *aff'd*, 740 F.3d 74 (1st Cir. 2014), to support its request to reject the NITE report and exclude MEI opinions referring to or relying upon the same. *Geshke* is distinguishable because it concerned the admissibility of the NITE report itself on summary judgment. The *Geshke* court found the NITE report to be inadmissible because it had not been properly

---

[7] In fact, the court stated:

> An expert is of course permitted to testify to an opinion formed on the basis of information that is handed to rather than developed by him— information of which he lacks first-hand knowledge and which might not be admissible in evidence no matter by whom presented. Fed. R. Evid. 703. And in explaining his opinion an expert witness normally is allowed to explain the facts underlying it, even if they would not be independently admissible. But the judge must make sure that the expert isn't being used as a vehicle for circumventing the rules of evidence. *Gong v. Hirsch*, 913 F.2d 1269, 1272-73 (7th Cir.1990). The fact that inadmissible evidence is the (permissible) premise of the expert's opinion does not make that evidence admissible for other purposes, purposes independent of the opinion.

*Id.*

authenticated and there was an absence of "expert testimony reliably relating the contents of the . . . report and its conclusions to the circumstances of N.K.'s accident." *Id.* at 262-63. *Geshke* does not provide a basis to reject the NITE report as admissible evidence, nor exclude MEI's related opinions.

As already discussed, facts or data need not be admissible for the expert opinion to be admissible "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703. Even when "facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury . . . if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." *Id.*

In the present case, Defendant has not addressed *Daubert's* testability factor. Scientific reliability can be found where the methodology "can be or has been tested." *City of Pomona*, 750 F.3d at 1046 (quoting *Cooper v. Brown*, 510 F.3d 870, 880-81 (9th Cir. 2007)). The relevant inquiry "is whether an expert's methodology can be 'challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability.'" *Id.* (quoting Fed. R. Evid. 702 Advisory Committee's Note to 2000 Amendments). "Testability 'assures the opponent of proffered evidence the possibility of meaningful cross-examination (should he or someone else undertake the testing).'" *Id.* (quoting *United States v. Mitchell*, 365 F.3d 215, 238 (3d Cir.

2004)).  The primary requirement under the testability factor is that "[s]omeone else using the same data and methods . . . be able to replicate the result[s]."  *Id.* at 1047 (alterations in original).  Plaintiffs represent that MEI provided sufficient information to enable a third-party to replicate the testing.

As for challenges to adherence to ASTM standards, said standards were followed and/or any modifications were made in accordance with the standards.  Even if this were not the case, adherence to protocol is typically an issue for the jury.  *Id.*  The Ninth Circuit takes a "more measured approach to an expert's adherence to methodological protocol [that] is consistent with the spirit of *Daubert* and the Federal Rules of Evidence:  there is a strong emphasis on the role of the fact finder in assessing and weighing the evidence."  *Id.* at 1048.  Accordingly, to the extent that Defendant objects to MEI's testing as unique and/or modified, the Court DENIES the Motion.  The Court finds that the testing satisfies FRE 702.

Defendant also argues that MEI's opinions are unreliable because of the significant bias caused by MEI's self-selection of the tested Crocs shoes.  Defendant engages in speculation regarding MEI's bases for the sampling of shoes selected for the various tests.  The record contradicts Defendant's theories about the allegedly biased shoe sampling.  First, MEI selected multiple Crocs shoes for testing, and those selected in addition to the Crocband (which W.K. was wearing during the incident) were the most commonly available Crocs at the time.  The

Crocs that MEI elected not to test were comprised of different materials and/or

MEI could not obtain a sufficient quantity for testing. Contrary to Defendant's

speculation, the evidence does not establish that the purchase of additional Crocs

models later in the testing process was driven by earlier test results.

Second, the mere fact that MEI did not include a flip-flop does not render

the opinions unreliable. Neither does the fact that all samples were not tested in

every test. These issues are more appropriately addressed through cross-

examination and/or the presentation of contrary evidence. *Daubert*, 509 U.S. at

596.

      3. <u>Second *Daubert* Prong – MEI's Opinions are Relevant</u>

Defendant submits that MEI's opinions do not satisfy *Daubert's* relevance

prong in the following respects: 1) MEI's conclusions do not accurately reflect the

results of the tests performed and therefore do not satisfy the "fit" requirement;

2) MEI's "more likely than not" causation opinion is nothing more than *ipse dixit*;

and 3) MEI did not apply its opinions to the facts of this case.

      a.    <u>MEI's Opinions "Fit" the Issues in This Case</u>

Under the "fit," or relevancy, requirement, expert testimony must be relevant

to the task at hand and must assist the trier of fact. Defendant's arguments suggest

that it misunderstands the "fit" requirement. Whether or not sufficient facts and

data exist to support MEI's conclusions is not salient to the "fit" requirement.

Instead, relevance looks at the "fit" between expert testimony and an issue in the case.  *Daubert II*, 43 F.3d at 1320.  Disregarding Defendant's flawed characterization of MEI's testing,[8] the Court finds that MEI's opinions are relevant.

In this action, Plaintiffs allege that Defendant was on notice that children wearing Croslite shoes suffered severe injuries when the shoe became trapped in small spaces on escalators; Defendant continued to manufacture, market, advertise, distribute, and sell its Croslite shoes for children without issuing any further public warnings or safety advisories except for small hang labels attached to some products; Defendant negligently and improperly designed and manufactured the footwear purchased for W.K.; Defendant had a duty to warn purchasers of the potential danger associated with using its footwear on escalators; Defendant's failure to adequately warn Plaintiffs of the potential danger of using Crocs on escalators directly and proximately caused injuries and damages; and Defendant breached its implied warranty of merchantability.  Doc. No. 45 at ¶¶ 29, 31, 34, 36-37, 39.  MEI's opinions clearly relate to and address Plaintiffs' claims and would assist the trier of fact.

---

[8]  For example, Defendant continues to insist that MEI did not test the Crocs Classic Clog, when the evidence establishes otherwise.

### b.    MEI's Opinions Are Not *Ipse Dixit*

Defendant seeks to exclude MEI's opinion that the Crocband properties were "more likely than not" a cause of W.K.'s entrapment on the basis that it is nothing more than *ipse dixit*.  When there is "too great an analytic gap between the data and the opinion proffered," district courts are not required under either *Daubert* or the Federal Rules of Evidence "to admit opinion evidence that is connected to the existing data only by the *ipse dixit* of the expert."  *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  According to Defendant, MEI's conclusions are deficient because they are not supported by statistical or mathematical analysis or evidence that the incident would not have happened if other children's shoes were worn at the time.  MEI's area of expertise is engineering.  An impermissible analytic gap is not created merely because MEI's opinions are not statistically and/or mathematically quantified.  As with most of Defendant's arguments, it is evident that Defendant disagrees with MEI's opinions, but that alone cannot serve as a basis for exclusion.  Defendant's challenges bear on weight, not admissibility, and are more properly the subject of cross-examination.

### c.    MEI Applied its Opinions to the Facts of This Case

Defendant asserts that MEI failed to reliably apply its principles and methods to the facts of the case.  However, MEI in fact applied its opinions to the circumstances of this case, even if not to the escalator at Hilton Hawaiian Village.

The testing involved the type of shoe worn by W.K. and concerned its propensity to become entrapped in escalators. The Court therefore finds that MEI's opinions are relevant.

### 4. Dr. Miller's Opinions Regarding the Failure to Warn are Relevant

Defendant lastly challenges MEI's opinions regarding warnings. It wishes to exclude: Dr. Miller's opinions that are derived from Mr. Cook's conclusions to the extent those opinions are inadmissible; opinion no. 4, which speaks to an issue of law; and Dr. Miller's opinions that do not pertain to Crocs shoes. In light of the Court's determination that Mr. Cook's opinions are admissible, Dr. Miller's opinions will not be excluded for relying on those opinions. The Court also declines to exclude Dr. Miller's opinions simply because he testified that the language on the recommended warning label did not need to specifically reference Crocs. His opinions are nevertheless relevant and pertain to the claims in this case.

The Court agrees, however, that opinion no. 4 should be excluded to the extent MEI has rendered a legal opinion. Opinion no. 4 states that "Crocs had a duty to provide adequate instructions for safe use and a duty to warn of the dangers inherent in using Crocs in an intended or reasonably foreseeable manner." Doc. No. 283-2 at 29. Whether a duty is owed is a question of law. *Kealoha v. E.I. du Pont de Nemours & Co.*, 82 F.3d 894, 899 (9th Cir. 1996). Expert opinions are not objectionable merely because they embrace an ultimate issue. Fed. R. Evid 704(a).

That said, expert witnesses cannot offer opinions as to their legal conclusions, i.e., opinions on ultimate issues of law. *Hangarter*, 373 F.3d at 1016.

At the hearing, Plaintiffs' counsel clarified that MEI did not intend to suggest a legal duty and offered to ensure that MEI does not offer it as a legal duty. Inasmuch as MEI has offered a legal conclusion, as drafted, opinion no. 4 must be excluded and any related testimony precluded. The Motion is therefore GRANTED as to opinion no. 4. If MEI is able to present this opinion as something other than a legal duty, it might be admissible, depending on the circumstances under which it is offered.

Based on the foregoing, the Court finds that MEI's opinions are relevant and reliable, with the exception of opinion no. 4. Thus, the Motion is GRANTED IN PART AND DENIED IN PART.

**B.      Plaintiffs' Motion to Exclude Certain Opinions of Dr. Anthony Hayter**

Plaintiffs ask the Court to exclude certain opinions and testimony of Dr. Anthony Hayter, one of Defendant's expert witnesses, on the grounds that the subject opinions fall outside the scope of his area of expertise as a mathematician and statistician and are based on false assumptions. Dr. Hayter's report, which contains the opinions that are the subject of this Motion, responds to the MEI report.

1. Scope of Expertise

Plaintiffs request that the Court exclude opinion nos. 3, 6, 8, and 9 offered by Dr. Hayter. Plaintiffs argue that because these opinions fall outside the scope of Dr. Hayter's expertise, they are improper and unreliable. In particular, Plaintiffs challenge Dr. Hayter's lack of experience with the testing conducted by MEI and his corresponding lack of qualifications to offer opinions about the test results. Although Plaintiffs do not refute Dr. Hayter's qualifications as a statistician, they emphasize that Dr. Hayter is not an engineer, he does not have an engineering degree, and he lacks certifications in the engineering trade. The exclusion of expert testimony should be reserved for instances of irrelevant or unreliable testimony, as "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

After careful consideration of the record and the parties' submissions, the Court DENIES Plaintiffs' request to exclude Dr. Hayter's opinion nos. 3, 6, 8 and 9. The Court addresses each challenged opinion in turn.

a. Opinion No. 3

Plaintiffs submit that Dr. Hayter exceeds the scope of statistical evaluation of MEI's test results by opining "that *no* real-world conclusions about escalatory entrapment can be drawn from the engineering testing—an opinion that

necessarily requires an understanding of the actual tests performed and the significance of the resulting data." Reply at 4-5. Defendant describes opinion no. 3 as addressing the flaws in MEI's conclusions from a mathematical/statistical standpoint. Opinion no. 3 states:

> 3. The testing and analysis performed by JMM[9] consisted only of shoe tests performed in a laboratory, without any reference to or involvement with any kind of escalator. No connections were made by JMM, and in fact it is not possible to make any connections based on the data JMM obtained, to how real world foot entrapment risks on an escalator relate to the combination of shoes worn and the conditions and characteristics of the escalators.

Mot., Ex. B at 19.

Based on its review of opinion no. 3, the Court finds that Plaintiffs overstate the conclusion reached by Dr. Hayter. In support of opinion no. 3, Dr. Hayter explained that MEI's "testing, analysis, and conclusions are based upon the unjustified and undiscussed assumption that any comparisons that they make between the different shoe types that they considered in their laboratory tests, will actually result in different risks of foot entrapment that will be manifested for all types of escalator conditions." *Id.* at 20. The crux of opinion no. 3 is that MEI failed to conduct real world testing. At his deposition, Mr. Cook conceded that he considered "just the shoe portion of those variables so for a given escalator at any given moment which shoes are more or less likely to be entrapped." *Id.* Dr.

---

[9] Dr. Hayter refers to MEI as JMM.

Hayter's observations about perceived shortcomings with the testing were not founded upon engineering principles. Rather, they were premised on the lack of real world testing on escalators and on Mr. Cook's admission that escalator conditions were not accounted for, and Dr. Hayter's opinion is within the scope of his expertise. Consequently, the Motion is DENIED to the extent it seeks exclusion of opinion no. 3 and related testimony.

    b.  <u>Opinion No. 6</u>

Plaintiffs contend that Dr. Hayter's lack of qualification to perform the testing conducted by MEI renders him unqualified to testify about the significance of data from engineering testing. Defendant counters that Dr. Hayter merely called into question MEI's attempt to fit their conclusion to the data obtained notwithstanding an absence of real world testing. Opinion no. 6 states, in pertinent part:[10]

---

[10] Plaintiffs' challenge is limited to the first sentence of opinion no. 6. The remainder of opinion no. 6 states:

> In addition, JMM did not present any real world data of foot entrapments of children's shoes on escalators in order to substantiate and validate their claims that Crocs children's shoes have an increased risk of foot entrapment on an escalator relative to other types of children's shoes that they selected for testing. In fact, there is no database available to properly assess the risk of foot entrapment on an escalator for Crocs children's shoes relative to any other type of children's shoes.

Mot., Ex. B at 30.

6.  JMM only presented a theoretical analysis of the foot entrapment risks on escalators of Crocs children's shoes compared with the other types of children's shoes that they selected for testing, but they did not carry out any foot entrapment tests on escalators.

*Id.* at 30.

A plain reading of this portion of opinion no. 6 reveals that Dr. Hayter did not opine about the meaning of test results. Instead, he identified a perceived deficiency with MEI's analysis of foot entrapment risks: the absence of real life foot entrapment tests. Citing Mr. Cook's deposition, Dr. Hayter expounded that MEI's theoretical analysis of foot entrapment risks of Crocs children's shoes compared with other types of children's shoes were based upon laboratory experiments that MEI performed, not foot entrapment tests on escalators. *Id.* Mr. Cook conceded that MEI did not recreate the escalator scenario at Hilton Hawaiian Village. *Id.* Dr. Hayter simply highlighted the absence of certain testing—it is undisputed that MEI did not perform tests on actual escalators—and how that affected MEI's analysis; therefore the Court finds that Plaintiffs have not established that the portion of opinion no. 6 at issue falls outside the scope of Dr. Hayter's area of expertise. Accordingly, the Court declines to exclude the challenged portion of opinion no. 6 or preclude testimony regarding the same.

c.  Opinion No. 8

Plaintiffs request exclusion of a portion of opinion no. 8 based on Dr. Hayter's purported lack of expertise with respect to coefficient of friction testing

and evaluation.[11]  In particular, Plaintiffs challenge Dr. Hayter's evaluation of coefficient of friction results and his comparison of these results with other studies, such as the Arthur D. Little study relied upon by MEI.  Defendant explains that Dr. Hayter merely referenced the Little study and compared it to MEI's data results from the coefficient of friction testing; that is, Dr. Hayter evaluated data, not the underlying testing.  The Court agrees.

Opinion no. 8 provides, in pertinent part:[12]

---

[11]  Plaintiffs argued:

> Dr. Hayter is not qualified to testify that Miller Engineering's coefficient of friction testing results do not provide any evidence that Crocs Kids Crocband shoes have a higher risk of foot entrapment on escalators than the other children's shoes since he is not an engineer, has never performed coefficient of friction testing, and has never testified about the results of such testing before this case.

Mem. in Supp. of Mot. at 12-13.  Footnote 24 appears at the end of this sentence in the main body of the memorandum.  However, there is no footnote 24 in the footer of the memorandum.

[12]  As with opinion no. 6, Plaintiffs only challenges the first sentence of opinion no. 8.  For context, the remainder of opinion no. 8 states:

> In addition, JMM did not conduct coefficient of friction tests on all of the shoes that they had selected for testing, and there was confusion and inaccuracies in the transmission of the coefficient of friction data from Avomeen Analytical Services to JMM, which undermines both the integrity of the data set and any conclusions that can be drawn from the data set.

Mot., Ex. B at 39.

8. JMM's coefficient of friction testing results do not provide any evidence that Crocs Kids Crocband shoes have a higher risk of foot entrapment on escalators than the other children's shoes that they selected for testing.

*Id.* at 39. Dr. Hayter began his analysis by referencing the Little study for the following propositions: 1) "[T]he initiation of entrapment of a test wedge is strongly related to the coefficient of friction," *id.*, and 2) "[W]hen the coefficient of friction between the skirt panel and the test object is approximately 0.6, initiation occurred in every case." *Id.* Given this information, Dr. Hayter explained that the Little study identified "a threshold level of 0.6 for the coefficient of friction for foot entrapments." *Id.* at 40. Compiling coefficient of friction results from the MEI report, Dr. Hayter noted that four of six shoes tested had coefficient of friction side values larger than the Crocs Kids Crocband shoes (the shoe selected by MEI as most representative of the shoes worn by W.K. at the time of the incident) and one shoe had a coefficient of friction sole value similar to the Crocs Kids Crocband shoes. *Id.* at 42-44. Dr. Hayter consequently opined that the coefficient of friction test results did not provide evidence that Crocs Kids Crocband shoes have a higher risk of foot entrapment on escalators as compared to other children's shoes that MEI tested.

Contrary to Plaintiffs' contentions, Dr. Hayter did not opine about the validity of the coefficient of friction testing, nor the conclusions reached. He merely observed that the test result data did not support the conclusion that Crocs

Kids Crocband shoes have a higher risk of foot entrapment than other children's shoes because other shoes had similar or higher coefficient of friction side and sole values.  Therefore, the challenged portion of opinion no. 8 will not be excluded and Dr. Hayter will not be precluded from testifying as to opinion no. 8.

### d.  Opinion No. 9

Plaintiffs reiterate that Dr. Hayter is unqualified to opine about how the testing relates to overall entrapment potential.  Defendant characterizes Dr. Hayter's opinion as an "analysis of the reliability of the data collected from MEI's testing and the analytical gap between that data and MEI's conclusions."  Opp'n at 10.

Opinion no. 9 states:

> 9.  JMM's other testing results (in addition to their coefficient of friction testing results) do not provide any clear indication of their claimed increased risk of foot entrapments on escalators for Crocs Kids Crocband shoes relative to the other children's shoes that JMM selected for testing.

Mot., Ex. B at 45.  To support this opinion, Dr. Hayter cited multiple tests identified in MEI's report—shoe material and configuration characterization, shoe sole material compression testing, whole-shoe compression testing, and hardness testing—and highlighted deficiencies with the data from each of the tests relative to the conclusions offered by MEI.  *Id.* at 45-48.  For example, with respect to shoe material and configuration characterization, "bulk composition" results (EVA sole

and body) were provided for the Crocs Kids Classic Clog and the Crocs Fun Lab Justice League Lights Clog even though those shoes were not tested for material. *Id.* at 45-46. The shoe sole material compression testing resulted in findings that five of the shoes tested, including two Crocs, had relatively low compressive stiffness and density, and were similar to one another, which caused Dr. Hayter to opine that the "data does not provide any clear indication of [MEI's] claimed increased risk of foot entrapments on escalators for Crocs Kids Crocband shoes" compared to other shoes tested. *Id.* at 47.

Dr. Hayter questioned the information provided by the data from whole-shoe compression testing; namely, its lack of "clear indication of [MEI's] claimed increased risk of foot entrapments on escalators for Crocs Kids Crocband shoes relative to the other children's shoes that [MEI] selected for testing." *Id.* at 47-48. According to MEI's report, the Crocs Kids Crocband shoe required less pressure than the other shoes at 18 mm nominal compression, similar pressure to another shoe at 15 mm nominal compression, and similar pressure to five other shoes at 10 mm nominal compression. Dr. Hayter found that MEI did not indicate how these test results provided accurate and relevant information about comparative practical foot entrapment risks on escalators between Crocs Kids Crocband shoes and the other shoes within the testing sample. *Id.* at 47. Dr. Hayter similarly concluded that MEI did not indicate how the hardness testing data provided

accurate information about comparative practical foot entrapment risks on escalators.  *Id.* at 48.

As the foregoing demonstrates, Dr. Hayter examined the various test results and identified the lack of association between the data and MEI's conclusion that there exists a higher foot entrapment risk on escalators for Crocs Kids Crocband shoes.   He did not challenge the testing itself.  For these reasons, the Court DENIES the Motion to the extent it seeks exclusion of opinion no. 9 and preclusion of corresponding testimony.

　　　2.  <u>False Assumption</u>

Plaintiffs additionally argue that opinion no. 2 must be excluded because it is based on a false assumption and is therefore unreliable.  Plaintiffs accuse Dr. Hayter of stringing together partial answers from Mr. Cook's deposition to opine that MEI's testing is biased given its decision not to test two pairs of Crocs children's shoes due to their perceived hardness.  Plaintiffs claim that Mr. Cook's deposition testimony, even the cherry-picked portions cited by Dr. Hayter, confirms that the decision not to test the shoes had nothing to do with perceived hardness.  Defendant responds that multiple factors influenced the decision not to test the Crocs Swiftwater Boot, including tactile assessment.

Opinion no. 2 states:

2.　　JMM's testing results of Croc children's shoes are <u>biased</u>
because they decided not to test two pairs of Crocs children's shoes

due to their perceived hardness.  This <u>biased</u> selection of Crocs children's shoes for testing implies that the JMM testing results cannot be generalized to all types of Crocs children's shoes.  Moreover, the elimination from testing of these two pairs of Crocs children's shoes reveals JMM's intention, prior to testing, that they only wanted to test "soft" Crocs children's shoes, and it raises questions about confirmation bias in their test results, and the overall objectivity and impartiality of their complete analysis.

*Id.* at 16.  Plaintiffs mischaracterize Mr. Cook's deposition testimony.   Mr. Cook in fact testified that the decision not to test the Crocs Swiftwater Boots was partly attributable to the composition of the sole, which he described as "hard compared to the Croslite."  Mot., Ex. A at 36:5-10; 16-19.  When asked whether his decision not to test the boots was based solely on his tactile assessment of the boots, Mr. Cook responded that the boots were multi-material, there were issues with obtaining the product, and the boots looked and felt different.  *Id.* at 36:25-37:21.  Mr. Cook's deposition testimony clearly established that his tactile evaluation of the boots—that they were harder and stiffer than the Croslite material—factored into the decision not to test them.  Therefore, Dr. Hayter has not made any false assumptions and opinion no. 2 will not be excluded, nor any testimony related thereto.

Based on the foregoing, the Court DENIES Plaintiffs' Motion to Exclude Certain Opinions of Anthony Hayter.

## CONCLUSION

For the reasons stated herein, the Court GRANTS IN PART AND DENIES IN PART Defendant Crocs Inc.'s Motion to Exclude Plaintiffs' Expert Miller Engineering Inc., filed June 22, 2018 (Doc. No. 299), and DENIES Plaintiffs' Motion to Exclude Certain Opinions of Anthony Hayter, filed June 20, 2018 (Doc. No. 295).

IT IS SO ORDERED.

DATED:     Honolulu, Hawai'i, December 7, 2018.



Jill A. Otake
United States District Judge

Civil No. 16-00460 JAO-KJM; *Kim, et al. v. Crocs, Inc., et al.*; ORDER: 1) GRANTING IN PART AND DENYING IN PART DEFENDANT CROCS INC.'S MOTION TO EXCLUDE PLAINTIFFS' EXPERT MILLER ENGINEERING INC. AND 2) DENYING PLAINTIFFS' MOTION TO EXCLUDE CERTAIN OPINIONS OF ANTHONY HAYTER

30